THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : 3:21-CR-383 |
| | : (JUDGE MARIANI) |
| ANTONIO BISHOP, | : |
| | : |
| Defendant. | : |

### MEMORANDUM OPINION
#### I. INTRODUCTION

Here the Court considers Defendant Antonio Bishop's Motion for New Trial and/or Judgment of Acquittal (Doc. 67) filed on April 18, 2023. Defendant's counsel filed this motion following a two-day trial which resulted in a guilty verdict on the two counts set out in the Indictment filed on December 14, 2021, in which Defendant was charged with knowingly attempting to provide a prohibited object to an inmate at the United States Penitentiary, Canaan, in violation of 18 U.S.C. §§ 1791(a)(1), 1791(b)(1), and 2, and being an inmate at the United States Penitentiary, Canaan, knowingly attempting to possess and obtain a prohibited objection in violation of 18 U.S.C. §§ 1791(a)(2), 1791(b)(5), and 2. (Doc. 1.) On April 4, 2023, a jury found Defendant guilty of both counts. (Docs. 64, 65.)

Defendant filed his supporting brief, titled "Brief in Support of Motion for Judgment of Acquittal," on May 9, 2023. (Doc. 74.) The Government filed its opposition brief on May 22, 2023. (Doc. 117.) Defendant did not file a reply brief and the time for doing so has passed.

Therefore, this matter is ripe for disposition. For the reasons discussed below, the Court will deny Defendant's motion.

## II. Background

The Indictment in which Defendant was charged alleged that between in or about December 2019 and on or about January 14, 2020, Defendant knowingly attempted to provide a narcotic drug, specifically Suboxone and amphetamines, to an inmate at the United States Penitentiary, Canaan, in Waymart, Pennsylvania. The Indictment also charged that in or about December 2019 and on or about January 14, 2020, Defendant knowingly attempted to possess a prohibited object, tobacco, while an inmate at the United States Penitentiary, Canaan.

Before trial the Government summarized the case as follows:

> in December 2020, Bishop was an inmate at United States Penitentiary, Canaan. He communicated with multiple individuals living outside of the penitentiary via email and telephone for the purpose of introducing controlled substances and other prohibited items into the facility for distribution. . . . [O]n January 14, 2020, correctional officers intercepted a package that was mailed into the prison that, based upon conversations Bishop had with other individuals, officers believed contained prohibited items.

(Doc. 49 at 2.)

Trial commenced on April 3, 2023. The evidence presented at trial consisted of testimony from four witnesses. USP Canaan Corrections Officer Steve Potter testified. (Trial Transcript ("T. Tr.") Day 1 94:1-112:18 (Doc. 71).) He was the officer who initially got the box containing prohibited items and was suspicious about it because of the way it was

addressed. (T. Tr. Day 1 100:12-101:18, 103:3-10 (Doc. 71).) Based on his suspicions, he turned the box over to USP Canaan Special Investigative Lieutenant Mark Turner. (*Id.* 103:20-104:1.) Turner testified that he conducted the investigation and searched the contents of the box, finding bags of tobacco inside a container of ramen noodles and strips of suboxone inside boxes of Little Debbie oatmeal cream pies. (*Id.* 137:15-143:15.) Turner also testified that he had earlier begun monitoring Defendant's communications based on a confidential informant's tip. (*Id.* 125:16-18.) Recordings and transcripts of phone conversations were admitted (*see, e.g., id.* 129:6-135:21), as were emails authored by Defendant (*see, e.g., id.* 151:12-152:19.) The third witness was FBI Agent Joseph Traino who had been part of the chain of custody and took the drugs to the lab for forensic analysis. (T. Tr. Day 2 43:22-46:23 (Doc. 72).) The fourth and final witness was Pennsylvania State Police Lab Technician Brandy Pulfer who testified that she tested the Suboxone strips and determined that they were Suboxone strips. (*Id.* 50:11-63:4.)

After the Government rested on the second day of trial Defendant's counsel made a motion for judgment of acquittal as to the charge of knowingly attempting to provide a prohibited object to an inmate at the United States Penitentiary, Canaan, in violation of 18 U.S.C. § 1791(a)(1). (T. Tr. Day 2 66:25-69:2 (Doc. 72).) Defendant's counsel argued that the charge did not apply to Defendant because § 1791(a)(1) applied to someone outside the prison providing a prohibited object to an inmate within the prison and Defendant, as an

3

inmate, was not outside the prison.[1] (T. Tr. Day 2 69:12-14 (Doc. 72).) After a lengthy discussion and oral argument on the issue, the Court denied the motion. (*Id.* 81:17-25.)

Defendant did not have any testimony to provide (*id.* 82:1-2) and the case went to the jury after closing arguments and the Court's jury charge. The jury returned a verdict of guilty on both counts. (*Id.* 130:24-131:8.)

### III. STANDARD OF REVIEW

### A. Motion for Judgment of Acquittal

A defendant may move for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. Where "the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2).

> In ruling on a motion for judgment of acquittal made pursuant to Fed. R. Crim. P. 29, a district court must "'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilty [sic] beyond a reasonable doubt based on the available evidence.'" *United States v. Smith,* 294 F.3d 473, 476 (3d Cir. 2002) (quoting *United States v. Wolfe,* 245 F.3d 257, 262 (3d Cir. 2001)). A finding of

---

[1] 18 U.S.C. § 1791, titled "Providing or possessing contraband in prison," provides as follows:

(a) Offense.--Whoever—

**(1)** in violation of a statute or a rule or order issued under a statute, provides to an inmate of a prison a prohibited object, or attempts to do so; or

**(2)** being an inmate of a prison, makes, possesses, or obtains, or attempts to make or obtain, a prohibited object;

shall be punished as provided in subsection (b) of this section.

18 U.S.C.A. § 1791.

4

> insufficiency should be "'confined to cases where the prosecution's failure is clear.'" *Smith,* 294 F.3d at 477 (quoting *United States v. Leon,* 739 F.2d 885, 891 (3d Cir. 1984)). Courts must be ever vigilant in the context of Fed. R. Crim. P. 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury. *See United States v. Jannotti,* 673 F.2d 578, 581 (3d Cir.) (en banc) (trial court usurped jury function by deciding contested issues of fact), *cert. denied,* 457 U.S. 1106, 102 S. Ct. 2906, 73 L.Ed.2d 1315 (1982); *see also* 2A Charles A. Wright, FED. PRAC. & PRO. (Criminal 3d) § 467 at 311 (2000) ("A number of familiar rules circumscribe the court in determining whether the evidence is sufficient ... It is not for the court to assess the credibility of witnesses, weigh the evidence or draw inferences of fact from the evidence. These are functions of the jury.").

*United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005). The Third Circuit has long advised that, in considering a post-verdict judgment of acquittal, the court "must uphold the jury's verdict unless no reasonable juror could accept the evidence as sufficient to support the defendant's guilt beyond a reasonable doubt." *United States v. Fattah*, 914 F.3d 112, 183 (3d Cir. 2019) (citing *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987)). In *United States v. Tyler*, the Third Circuit reiterated the well-recognized standard:

> This review is "highly deferential" to the factual findings of the jury, and we "must be ever vigilant ... not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [our] judgment for that of the jury." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (alteration and omission in original) (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)).
>
>> Thus, even if the evidence adduced is consistent with multiple possibilities, our role as a reviewing court is to uphold the jury verdict ... as long as it passes the bare rationality test. Reversing the jury's conclusion simply because another inference is possible – or even equally plausible – is inconsistent with the proper inquiry for review of sufficiency of the evidence challenges, which is that [t]he evidence does not need to be inconsistent with every conclusion save that of

> guilt if it does establish a case from which the jury can find the defendant guilty beyond a reasonable doubt. It is up to the jury – not the district court judge or our Court – to examine the evidence and draw inferences. Unless the jury's conclusion is irrational, it must be upheld.

*Id.* at 433 (alteration in original) (internal quotation marks and citation omitted).

956 F.3d 116, 122-123 (3d Cir. 2020).

## B. Motion for a New Trial

A defendant may move for a new trial pursuant to Federal Rule of Criminal Procedure 33 which provides in pertinent part that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires . . . ." Fed. R. Crim. P. 33(a).

> "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Johnson,* 302 F.3d 139, 150 (3d Cir. 2002). However, even if a district court believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial "only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *Id.* (citation and quotation marks omitted). . . . Such motions are not favored and should be "granted sparingly and only in exceptional cases." *Gov't of Virgin Islands v. Derricks,* 810 F.2d 50, 55 (3d Cir. 1987) (citations omitted).

*United States v. Silveus*, 542 F.3d 993, 1004-1005 (3d Cir. 2008). "The discretion that federal trial courts exercise in addressing allegations of juror and prosecutorial misconduct extends to the determination of whether prejudice has been demonstrated." *United States v. Smith*, 139 F. App'x 475, 477 (3d Cir. 2005) (citing *United States v. Resko,* 3 F.3d 684,

6

690 (3d Cir. 1993)). Where a defendant alleges that the cumulative effect of trial errors resulted in an unfair trial, a new trial is required "only when 'the errors, when combined, so infected the jury's deliberations that they had a substantial influence on the outcome of the trial.'" *United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993) (quoting *United States v. Hill*, 976 F.2d 132, 145 (3d Cir. 1992)).

## IV. ANALYSIS

Defendant's Motion for New Trial and/or Judgment of Acquittal (Doc. 67) requests that the Court grant either a judgment of acquittal or a new trial. (Doc. 67 at 3.) His supporting brief is only in support of a motion for judgment of acquittal and does not set out any legal standard or argue how the issues raised entitle him to relief in the relevant legal context. (*See* Doc. 74.) Despite this deficiency, the Court will review Defendant's identified issues under both the judgment of acquittal standard and new trial standard.

In his supporting brief, Defendant identifies three issues: 1) the Court's failure to grant a mistrial when the Government introduced evidence of prior bad acts; 2) the Court's failure to grant a mistrial because of personal attacks on Defendant's counsel in the Government's closing rebuttal; and 3) the Court's failure to grant Defendant's request for judgment of acquittal on Count 1 of the Indictment.[2] (Doc. 74 at 3-4.)

---

[2] Defendant has submitted pro se filings which raise additional grounds for relief. (Docs. 76, 85.) Defendant does not have the right to raise additional arguments pro se while he is represented by counsel, and the Court is not obligated to consider pro se motions when Defendant is represented by counsel. *See, e.g., United States v. Williams*, Crim. No. 17-0195, 2021 WL 4847085, at *1 (W.D. Pa. Oct. 1, 2021) (citing *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984); *United States v. Turner*, 677 F.3d 570, 578 (3d Cir. 2012); *United States v. D'Amario*, 268 F. App'x 179, 180 (3d Cir. 2008)). However, to the extent the Court

7

## A. Prior Bad Acts

Defendant does not identify any specific prior bad acts introduced by the Government. Rather, he alleges that, on redirect examination of Agent Turner, the Government asked him the purposes for which an inmate would be placed on the Required Monitoring Program after defense counsel elicited evidence on cross-examination that Defendant was on the Required Monitoring Program. (Doc. 74 at 4.) Defendant posits that "there would be no reason to introduce this type of evidence other than to diminish the Defendant's character and to demonstrate hia propensity to commit this crime by suggesting that he had committed this type of crime in the past." (*Id.*)

Federal Rule of Evidence 404(b) address the use of "Other Crimes, Wrongs, or Acts" and provides as follows:

> **(1) Prohibited Uses.** Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> **(2) Permitted Uses.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.
>
> **(3) Notice in a Criminal Case.** In a criminal case, the prosecutor must:
>
> **(A)** provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;

---

deemed appropriate, the Court has investigated matters raised by Defendant and concluded that further action is not warranted.

>   **(B)** articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and
>
>   **(C)** do so in writing before trial--or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b).

The following exchange took place at the start of the Government's redirect examination of Agent Turner.

>   Q. Now, you had testified on cross examination that the Defendant was on Required Monitoring Program?
>
>   A. Correct.
>
>   Q. That's why you were speaking with him, as often as you did?
>
>   A. Correct.
>
>   Q. What is the Required Monitoring Program?
>
>   A. Required Monitoring is a program that the Bureau of Prisons has. There's multiple reasons why you get placed on Required Monitoring. If you have introduced drugs at a previous facility, if you threaten Federal officials, there's a plethora of reasons that places you on Required Monitoring.

(T. Tr. Day 2 32:8-19 (Doc. 72).)

Defense counsel objected after Agent Turner provided the foregoing description of the Required Monitoring Program and asked for a sidebar conference. (*Id.* 32:20-21.) At sidebar, defense counsel noted that the Required Monitoring Program had come up when he asked Agent Turner whether he had regular conversations with Defendant, adding that he

stayed away from it, because I think it's 404(b), and I had no notice of 404(b), and now they're trying to induce [sic] prior bad acts that – okay, he brought drugs into another facility, he got in a fight with a guard or whatever else she's introducing as to prior bad acts.

No indication that stuff is coming in, and I think it's prejudicial and I move for a mistrial.

(*Id.* 33:1-9.)

The Court then asked whether the Government intended to proceed as Defendant's counsel suggested, and the Government responded:

No, Your Honor. The witness was answering the Defendant's cross examination question, with regard to how he's familiar with the voice and why he was speaking with him. And the question had to do something with, he speaks with them on the chow line, and that's it. He said, That's when you speak to him? He said, No, I was speaking with him because he had questions about having to do with his Required Monitoring Program.

That was in direct response to a question Attorney Walker asked about. Why are you talking to him? Are you talking about sports? What are you talking about? That's why they were talking, because he was part of his Required Monitoring Program. So I'm eliciting what that is, what the Required Monitoring Program is.

(T. Tr. Day 2 33:13-34:1 (Doc. 72).)

After being assured by Government's counsel that she was not going to get into the reasons why Defendant was in the Required Monitoring Program or anything of that nature (id. 34:2-7), the Court allowed her to proceed, stating that the reason it was being allowed is "there's a question as to whether what [Agent Turner] gave you is sufficient to show that he had familiarity with [Defendant's voice]. To the extent that's where you're going, that's fine.

10

If you go beyond that, object." (*Id.* 34:17-20.) Defendant's counsel did not further object to the follow-up questions. (*Id.* 34:24-35:24.)

Defendant has provided no reason for the Court to reach a different conclusion now. The Government's stated reason for asking a question about the Required Monitoring Program on redirect was not to introduce evidence of any other crime, wrong, or act committed by Defendant to prove his character "in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). On cross examination, Defendant's counsel had raised the issue of Agent Turner's familiarity with Defendant's voice, *see supra* p. 10, and there is no indication that Agent Turner's response as to how he was familiar enough with Defendant's voice to identify it on the tapes previously admitted was intended to introduce evidence of other crimes, wrongs, or acts. (*See* T. Tr. Day 2 5:10-6:20 (Doc. 72).) Nor is there any indication that the redirect was intended to do so—the initial (pre objection) question was generic and follow-up questions elicited nothing more specific about the reason Defendant's communications were monitored.

Under the standard governing a motion for judgment of acquittal made pursuant to Federal Rule of Criminal Procedure 29, Defendant's argument regarding questioning related to the Required Monitoring Program does not go the issue of whether the evidence was sufficient for a rational trier of fact to find Defendant guilty beyond a reasonable doubt. *See, e.g., Brodie*, 403 F.3d at 133, *Fattah*, 914 F.3d at 183.

Under the standard governing a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33, Defendant presents no basis for the Court to find error in the decision to overrule Defendant's objection regarding the redirect examination of Agent Turner.  Further, the Court finds no basis to conclude that Defendant has demonstrated prejudice based on questions and responses related to the Required Monitoring Program. *Smith*,139 F. App'x at 477.  Nor does the Court have any basis to believe "that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *Johnson*, 302 F.3d at 150.

## B. Closing Argument Comments

Defendant next contends that the Court erred "in not granting a mistrial because of personal attacks on Defendant's counsel during the Government's Rebuttal closing." (Doc. 74 at 4.)

In his closing argument, Defendant's counsel reiterated the argument he had previously made to the Court in support of his motion for judgment of acquittal, i.e., that Defendant could not be guilty of the charge of knowingly attempting to provide a prohibited object to an inmate at the United States Penitentiary, Canaan, in violation of 18 U.S.C. § 1791(a)(1) because § 1791(a)(1) applied to someone outside the prison providing a prohibited object to an inmate within the prison and Defendant, as an inmate, was not outside the prison.  (T. Tr. Day 2 96:13-100:13 (Doc. 72).)  The Government's counsel began his rebuttal by stating

> [t]he distinction that Mr. Walker is telling you about in the Statute doesn't exist. I don't know how else to put it. I'm not calling him a liar, I guess, what I'm saying is, I disagree, that's because I read the Statute, and I'm not adding anything to it.
>
> The instructions that you hear from the Judge are never going to say that an element of the crime on the first count is that you have to be a guard or somebody on the outside and not an inmate, it's not in the Statute. He made it up. He read it into the Statute because he thinks that means his client is not guilty. It's not there.
>
> . . . .
>
> It's true. Judge Mariani will tell you the law, that's the law you need to go by. That law doesn't say any of the things that you just heard. Magicians have this trick, it's called misdirection.

(T. Tr. Day 2 100:16-101:13 (Doc. 72).)

Defendant's counsel objected, stating "that's offensive and grounds for a mistrial." (*Id.* 101:10-13.) The Court responded, "[t]his is all argument, each and every bit of it. Let's refrain from anything that might be deemed a personal attack on opposing counsel." (*Id.* 101:18-20.) Government counsel stated that he did not mean to attack Defendant's counsel personally and he apologized "if it came out wrong." (*Id.* 101:21-24.)

As with Defendant's 404(b) argument, his allegation regarding the closing argument does not go to the weight of the evidence and, therefore, cannot serve as support for his motion for judgment of acquittal. *See supra* p. 11. Further, the jury is specifically instructed that the evidence from which the jury is to find facts does not include "[s]tatements and arguments of the lawyers for the parties in this case." (*Id.* 107: 17-18.) Therefore, in the Rule 33 context, the Court finds no basis to conclude that Defendant has demonstrated

13

prejudice related to closing argument comments. *Smith*, 139 F. App'x at 477. Nor does the Court have any basis to believe closing argument comments present "a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *Johnson*, 302 F.3d at 150.

### C. Motion for Judgment of Acquittal During Trial

With his third basis for relief, Defendant renews his argument made at the close of the Government's case and in his closing argument that 18 U.S.C. § 1791(a)(1) applies only to those outside the prison. Defendant provides no basis for the Court to reconsider its earlier ruling on this issue, *see supra* pp. 3-4, or find that it's instructions to the jury on the elements of this charge were in error.[3] Therefore, Defendant has not shown entitlement to relief under Federal Rule of Criminal Procedure 29 or Federal Rule of Criminal Procedure 33 related to the Court's ruling and instruction related to 18 U.S.C. § 1791(a)(1).

### V. CONCLUSION

For the foregoing reasons, Defendant's Motion for New Trial and/or Judgment of Acquittal (Doc. 67) will be denied. A separate Order will be entered.

Robert D. Mariani
United States District Judge

---

[3] Defendant's counsel conceded that there was no case law supporting his interpretation of 18 U.S.C. § 1791(a)(1). (T. Tr. Day 2 73:18-24 (Doc. 72).)

14