THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : 3:21-CR-383 |
| | : (JUDGE MARIANI) |
| ANTONIO BISHOP, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

Here, the Court addresses Defendant's objections to the Presentence Investigation Report ("PSR") (Doc. 79). Defendant objects to the following paragraphs of the PSR: 1, 7, 8, 9, 12, 15, 18, 20, 22, 23, 30, 31, 33, 61, 62, 76, 77.[1] The Court conducted a hearing concerning these objections before sentencing on January 31, 2024. After considering Defendant's written objections, all relevant documents, and arguments presented at the hearing, the Court concludes that Defendant's remaining objections are properly either deemed moot or overruled for the reasons discussed below.

---

[1] Paul Walker. Esq., was Defendant's trial attorney and also filed Defendant's Motion for New Trial and/or Judgment of Acquittal (Doc. 67). On August 2, 2023, Mr. Walker filed the Motion to Withdraw as Counsel, stating that "it would be difficult to represent[ ] the Defendant asserting irreconcilable differences." (Doc. 99 at 1.) On August 9, 2023, the Court granted Mr. Walker's motion (Doc. 102) and appointed Shelley Centini, Esq., to represent Defendant (Doc. 104). During his representation of Defendant, Mr. Walker lodged objections to the PSR. (*See* Doc. 80.) In a letter to the probation officer dated October 5, 2023, Ms. Centini summarized outstanding objections which had been raised by Mr. Walker and filed "supplemental objections." (Doc. 110 at 3-5.)

### A. Withdrawn Objections

At the hearing held on January 31, 2024, Defendant's counsel withdrew the following objections based on their lack of relevance to the sentencing calculation in this case: objections to PRS paragraphs 1, 8, 9, 15, 20, 33, and 61.

### B. Objection Deemed Moot

At the hearing held on January 31, 2024, Defendant's counsel agreed that the objection to paragraph 7 of the PSR is moot.

### C. Objections Addressed on the Merits

At the hearing held on January 31, 2024, the Court addressed Defendant's objections to paragraphs 12, 22, 18, 23, 30, 31, 62, 76, and 77 of the PSR. The Court overruled each objection for the reasons that follow.

#### 1. Paragraphs 12 and 22

Paragraph 12 states as follows:

> Antonio Bishop has not demonstrated a recognition and affirmative acceptance of responsibility for his criminal conduct. Application Note 2 of USSG §3E1.1 indicates that a reduction in the offense level is not warranted when a defendant puts the Government to its burden of proof at trial.

(Doc. 79 at 5.)

Paragraph 22 states as follows:

> Acceptance of Responsibility: The defendant does not qualify for a reduction for acceptance of responsibility (paragraph 12).

(Doc. 79 at 6.)

Defendant objects "to the denial of a 2-level reduction for acceptance of responsibility pursuant to USSG §3E1.1." (Doc. 110 at 3.)

The PSR only references part of Application Note 2 which is not the entirety of Application Note 2. The entire Application Note reads as follows:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct

USSG §3E1.1 Application Note 2.

Defendant directs the Court's attention to Defendant's counsel's closing argument where counsel argued the application of 18 U.S.C. § 1791(a)(1) to Defendant's conduct and asserts that "the purpose of the trial was to defend on the ground that this section of the statute does not apply to an inmate but rather to an outside party" and this is "a classic example of the circumstances described in application note 2." (Doc. 110 at 4 (citing T. Tr. Day 2, 94 (Doc. 72)).)  Defendant also points to Mr. Walker's closing argument where counsel "instructed the jury to find Mr. Bishop guilty of Count 2 of the Indictment which charged 18 USC § 1791(a)(2).  This section clearly applied to Mr. Bishop's conduct and, through

counsel, Mr. Bishop accepted responsibility." (Doc. 110 at 4 (citing T. Tr. Day 2, 99-100 (Doc. 72)).)

Concerning Defendant's pretrial statements and conduct, Defendant points to ¶ 9 of the PSR where Defendant allegedly admitted his part in the criminal scheme and states that it is part of the trial record in this case. (Doc. 110 at 4.)

Probation disagreed with Mr. Walker's objection on this point (relying on the part of the application note which states that a reduction is not warranted when the defendant "puts the Government to its burden of proof at trial," (see Doc. 80 at 2)) and does not address Ms. Centini's argument in the Second Addendum (see Doc. 110 at 1-2).

The Government argues that Defendant accepts responsibility for Count 2 regarding tobacco but does not accept responsibility for the full scope of his criminal conduct, finding it "incredibl[e]" that Defendant seeks to use his statement to officers that "he claims was admitted in violation of his Constitutional rights and cannot be relied upon by the Court as evidence of his guilt and the scope of his criminal conduct, should be relied upon to prove he accepted responsibility prior to trial." (Doc. 112 at 5.)

Defendant asserts that his consistent position regarding the inapplicability of 18 U.S.C. § 1791(a)(1) and pretrial evidence of his admission of guilt about the criminal scheme show that he meets the example in Application Note 2. However,

4

Defendant's current position does not explain his position on the first day of trial (before the trial began and, therefore, properly considered "pre-trial statements and conduct," USSG §3E1.1, Application Note 2) when he stated he wanted new counsel "[b]ecause I want to show my innocence. There is evidence in the case that's not being brought to the table . . . that can help me that I've been asking for and is not here." (T. Tr. Day 1, 3:10-13 (Doc. 71).) Defendant thereafter made statements to the Court that contradicted his statements of culpability about which an interviewing prison official, Special Investigative Lieutenant Mark Turner, later testified.[2] For example, Defendant made the following statement to the Court:

> [f]irst of all, . . . I never said that I used [Pitts'] email. My lawyer just stated I said I used his email. I never used this guy's email, first of all.
>
> Second of all, . . . this guy Louis Pitts, in this case, it's a package sent to him. They're saying that I sent it to him. These guys are trying to come in and testify who sent this package to him. He's a very important part of me showing that I did not send this package to this guy. He's willing to come in here to testify what happened about this, and I don't know about -- I need him on that stand to tell the jury who sent this package to him.
>
> And he said that the officers made allegations about Mr. Pitts, saying that he implicated me, which, I think, Mr. Pitts is going to get on there and say that the officer is telling a lie, sir, and it's very vital, very vital in this case when they're saying that I sent somebody something, and you all don't want to bring the man it was sent to the court.

---

[2] Turner testified that the interview with Defendant was conducted at Defendant's request, see supra p. 7 n.3; Turner also testified that Defendant admitted his role in the scheme (T. Tr. Day 1, 147:21-150:1 (Doc. 71)); Defendant's counsel again raised the issue of the applicability of § 1791(a)(1) (Count 1) in his closing argument; and Defendant's counsel also stated in his closing argument "Count 2. Don't even bother deliberating Count 2. Don't even bother. Guilty" (T. Tr. Day 2, 99:21-22 (Doc. 72)).

(T. Tr. Day 1, 5:20-6:11 (Doc. 71).)

Defendant's argument that he has consistently accepted responsibility for the criminal conduct charged is further undermined by his now withdrawn efforts to exclude his statements and those of Louis Pitts regarding Defendant's role in the scheme. *See supra* p. 1 (withdrawing objection to paragraph 8 of the PSR). The fact that Defendant sought to have Pitts' affidavit included in the PSR if the Pitts' statements continued to be referenced in the PSR also shows that Defendant continued to seek to distance himself from the criminal conduct in that, in the affidavit, Pitts essentially denies Defendant's role in sending drugs to the prison when he states that "Turner tried to bribe me into implicating Bishop or getting someone to send me drugs but it's not true so I wouldn't do that." (Doc.110 at 6.)

The foregoing analysis shows that Defendant did not accept responsibility for the conduct charged. His claims of innocence and lack of involvement in the scheme go beyond a claim that the 18 U.S.C. § 1791(a)(1) charged in Count 1 of the Indictment did not apply to an inmate providing a prohibited object to another inmate but rather applied only to an outsider doing so. Defendant's clear expression of innocence at the beginning of the first day of trial and his assertions that officers lied about statements regarding Defendant's involvement in the scheme belie acceptance of responsibility for the criminal conduct charged and his reason for going to trial goes beyond his disagreement with the applicability of a statute to his conduct as required under Application Note 2.

Although Defendant's counsel consistently made the argument that the violation of 18 U.S.C. § 1791(a)(1) charged in Count 1 of the Indictment did not apply to an inmate providing a prohibited object to another inmate but rather applied only to an outsider doing so, Defendant clearly did not unequivocally accept responsibility for the criminal conduct charged. Therefore, a two-level reduction for acceptance of responsibility is not warranted and Defendant's objection regarding paragraphs 12 and 22 of the PSR is overruled.

**2. Paragraph 18**

Paragraph 18 states as follows:

> Adjustment for Role in the Offense: The defendant exercised decision-making activity, recruited accomplices, claimed a larger share of the fruits of the crime, planned and organized the offense, directed the activities of others, and established prices. Because the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, four levels are added. USSG §3B1.1(a).

(Doc. 79 at 6 (adding 4 points).)

Defendant objects to a 4-level increase for his role in the offense. (Doc. 110 at 4.)

> Mr. Bishop alleges that there were not 5 or more participants. As per the affidavit of Louis Pitts attached, Mr. Pitts denied involvement in the scheme. Additionally, the only evidence of Jarvis Hemphill's involvement was Mr. Bishop's statement to prison officials on January 20, 2020, which was a custodial interrogation without *Miranda* warnings. Therefore, Mr. Hemphill's involvement should not be considered. With Mr. Pitts and Mr. Hemphill removed, there were only 3 alleged participants: Antonio Bishop, Anton Bishop, and Ivy Smith.

(Doc. 110 at 4-5.)

USSG §3B1.1(a) requires five or more participants to warrant the 4-level enhancement. Defendant's assertion that Louis Pitts should not be considered part of the scheme is without merit in that ample trial evidence established his participation in the scheme. Further, Pitts' self-serving affidavit does not undermine the evidence presented at trial. As to Jarvis Hemphill, trial testimony indicates that Pitts replaced Hemphill in the scheme when Hemphill was moved to a different unit. Specifically, when AUSA Jenny Roberts asked Special Investigative Lieutenant Mark Turner whether Defendant had explained whether he attempted to work with another inmate before working with Louis Pitts, Turner responded,

> [y]eah, he had stated that, initially he was utilizing Inmate Hemphill's inmate account, but Inmate Hemphill got moved from the RDAP Program, got moved to another housing unit down the other side of the jail. So if Inmate Hemphill got that property, he wouldn't be coming back to the RDAP Program, because he was no longer in that program, so he no longer used Inmate Hemphill's account.

(T. Tr. Day 1, 149:7-13 (Doc. 71).) Ms. Roberts then asked whether Defendant said he was giving Pitts anything in return for the use of the email account and Turner responded that Defendant said Pitts was going to get a cut of the profit when it came in. (*Id.* 149:14-17.)

Because ample evidence supports participation at some stage of the scheme on the part of Pitts and Hemphill, Defendant's objection to paragraph 18 of the PSR and the four-level enhancement for his role in the offense is overruled.

### 3. Paragraph 23

Paragraph 23 states as follows:

Total Offense Level: 30

(Doc. 79 at 6.)

Defendant objects to this calculation for the reasons previously stated. (Doc. 110 at 5.)

Based on the Court's overruling of Defendant's objections related to the offense level set out above, this objection is without merit. Therefore, Defendant's objection to paragraph 23 of the PSR is also overruled.

### 4. Paragraphs 30 And 31

Paragraphs 30 and 31 each provide three (3) criminal history points: ¶ 30 for a May 1, 2004, Aggravated Assault charge for which Defendant was sentenced to five years imprisonment on June 27, 2006; and ¶ 31 for an April 26, 2005, Terroristic Threats charge for which Defendant was sentenced to five years imprisonment on June 27, 2006. (Doc. 79 at 8-9.)

Defendant states that he

> objects to the addition of 3 criminal history points for each of the convictions separately listed in these paragraphs. Mr. Bishop was sentenced on the same day for these offenses—June 27, 2006. Therefore, pursuant to USSG §4A1.2(a)(2)(B), only one of these convictions should give Mr. Bishop 3 criminal history points. This would reduce his overall criminal history category to a V.

(Doc. 110 at 5.)

The First Addendum to the PSR addressed this objection initially lodged by Mr. Walker (he asserted that "these sentences run concurrent and should not be cumulative") and concluded that the points were properly assigned.

> Pursuant to USSG §4A1.2(a)(1), "The term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense." The guidelines direct that three points should be added for each prior sentence of imprisonment exceeding one year and one month.

(Doc. 80 at 2.)

The probation officer then considered the application of §4A1.2(a)(2) which states that

> [i]f the defendant has multiple prior sentences, determine whether those sentences are counted separately or treated as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Treat any prior sentence covered by (A) or (B) as a single sentence.

USSG §4A1.2(a)(2).

The probation officer then concludes as follows,

> [i]n the instant case, the defendant was arrested and incarcerated for the conviction in paragraph 30 at the time he committed the offense for the conviction in paragraph 31. This constituted an "intervening arrest." The defendant was sentenced to 5 years imprisonment and three criminal history points were assigned to each case.

(Doc. 80 at 2.)

Ms. Centini's objection does not dispute the Addendum's explanation of the assignment of points. The provision upon which Ms. Centini relies, §4A1.2(a)(2)B), does not apply to the sentences at issue: the provision indicates that the sentences were properly counted separately in this case. Although the sentences were imposed on the same day, Defendant was arrested for the first offense prior to committing the second offense: Defendant was arrested on the Aggravated Assault charge on May 1, 2004, and he was arrested on the Terroristic Threats charge on April 26, 2005, for threats he made while incarcerated on March 6, 2005, March 12, 2005, and March 13, 2005. (Doc. 79 at 8-9.) Though he was sentenced for both on June 27, 2006, clearly Defendant was arrested for the first offense on May 1, 2004, which is well before he before he committed the second offense for conduct which occurred in March of 2005. (*Id.*) Because the provision upon which Defendant relies does not apply in the circumstances presented here, i.e., the sentences having been imposed for offenses that were separated by an intervening arrest, Defendant's objection to paragraphs 30 and 31 of the PSR is overruled.

## 5. Paragraph 62

Paragraph 62 states as follows:

Guideline Provisions: Based on a total offense level of **30** and a criminal history category of **VI**, the guidelines imprisonment range is **168** to **210** months.

(Doc. 79 at 15.)

11

Defendant "objects to the calculations of both his criminal history and offense level for reasons stated herein." (Doc. 110 at 5.) Because objections as to criminal history points and offense level have been overruled, Defendant's objection to paragraph 62 of the PSR is without merit and is also overruled.[3]

### 6. Paragraphs 76 And 77

Paragraph 76 states as follows:

> The probation officer has not identified any factors that would warrant a departure from the applicable guideline range.

(Doc. 79 at 17.)

Paragraph 77 states as follows:

> No factors have been identified under 18 U.S.C. § 3553(a) that would warrant a sentence outside the advisory guidelines system.

(Doc. 79 at 17.)

---

[3] As explained in the Second Addendum to the PSR,

> Under the proposed amendments to the 2023 Sentencing Guidelines Manual, USSG §4A1.1(d) will be eliminated and replaced with USSG §4A1.1(e) and read "add one point if the defendant receives 7 or more points under subsections (a) through (d) and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.
>
> Pursuant to the proposed amendment, the defendant would not receive two criminal history points for being under a criminal justice sentence (paragraph 35). Antonio Bishop's total criminal history, after subtracting one point, would be 13. His criminal history category would remain VI.

(Doc. 110 at 1.)

Defendant objects to the conclusion that there are no factors that warrant a departure or sentence outside of the guidelines, stating that

> Mr. Bishop has mitigating factors which warrant a variance below the guidelines, some of which are outlined in the PSR and others which will be presented to the Court at sentencing. Additionally, Mr. Bishop contends that a 3-level reduction should be applied to his case pursuant to USSG §2X1.1(b)(1). Mr. Bishop was charged with an inchoate offense – attempt. In examining the trial transcript, there is insufficient evidence that Mr. Bishop was about to complete the acts necessary to complete the offense but for interruption or apprehension.

(Doc. 110 at 5.)

After stating that § 3553 (a) factors addressed in Defendant's Sentencing Memorandum (Doc. 111) would be separately addressed, the Court considered the objection only as to USSG §2X1.1(b)(1). The Court did so although Defendant provided no additional argument on the issue.

USSG §2X1.1(b)(1) provides as follows:

> If an attempt, decrease by 3 levels, unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control.

USSG §2X1.1(b)(1).

Trial testimony and evidence show that Defendant "was about to complete" the acts necessary for successful completion of the substantive offense. Louis Pitts just had to get the box which Defendant arranged to be addressed to him and turn it over to Defendant, but these acts did not happen because the package was deemed suspicious and submitted for

special investigation which revealed contraband. These circumstances show that completion of the substantive offense was thwarted by interruption beyond Defendant's control, i.e., the suspicion about the package on the part of prison officials and their diversion of the package for special investigation. Defendant's vague argument that there was insufficient evidence that he was about to complete the acts necessary to complete the offense but for interruption or apprehension is without merit. Because USSG §2X1.1 does not apply in this case, Defendant's objection to paragraphs 76 and 77 of the PSR is overruled.

## CONCLUSION

For the foregoing reasons, Defendant's remaining objections are overruled. An appropriate Order follows.

_____
Robert D. Mariani
United States District Judge